[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-13529
Non-Argument Calendar

————————————————

D.C. Docket No. 8:18-cv-00359-JSM-CPT

BENITA MCCONICO,

Plaintiff-Appellant,

versus

CITY OF TAMPA,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(August 6, 2020)

Before MARTIN, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

Benita McConico appeals the district court's grant of summary judgment to

the City of Tampa on her claims of racial discrimination under Title VII of the

Civil Rights Act of 1964 ("Title VII") and retaliation under the Americans with Disabilities Act ("ADA").  After careful review, we affirm.

I.

## A. Employment History

Beginning in 2007, McConico was employed by the City of Tampa ("the City") as an "Automotive Equipment Operator I" in the City's Neighborhood Empowerment Department.  Her job was to operate lightweight trucks and construction and maintenance equipment for the City.  Her supervisor was Susan Wenrick.  Under the City's "Know Your Role" program, City employees are categorized into four different groups for the purposes of responding to emergency events, such as hurricanes.  As an Automotive Equipment Operator I, McConico was designated as a Group II, "Non-emergency Assigned Employee."  Group II employees are not required to work during emergencies but are expected to provide emergency support and ensure continuity of City services.

On Monday, September 11, 2017, the City suspended normal operations due to Hurricane Irma.  Carlos Rios, a Neighborhood Team Leader in the Neighborhood Empowerment Department, was assigned to act as Operations Chief for Damage Assessment and Logistics Chief of the Neighborhood Enhancement teams for the duration of the storm.  On September 7th or 8th, before the hurricane made landfall, Rios met with all Neighborhood Enhancement employees and

2

advised them to make preparations in case they were required to report to work the following week. He also advised them that reporting to work would be mandatory if they were called upon.

On the afternoon of September 11, Rios began contacting Neighborhood Enhancement crew supervisors to inform them that they would be activated the following day, which meant their crews would be required to report to work. Rios could not reach McConico's crew supervisor, Bob Hollie, so he called members of Hollie's team directly. Rios claims he spoke with McConico at 4:22 p.m. and informed her that she needed to report to work at 7 a.m. the next day. He recalls that McConico told him that she could not report to work because her power was out. He says he told McConico that a power outage was not a valid excuse and she was still required to come to work.

On September 12, Hollie informed Rios that McConico did not report to work because schools were closed, and she could not leave her grandchildren at home. McConico was later informed that she was considered absent without leave on September 12 and so not paid for that day. She filed a grievance challenging the decision not to pay her for September 12, in which she stated that she spoke with Hollie at 6:23 a.m. on September 12 and he agreed she could remain at home.

After the hurricane, McConico and two other employees of the Neighborhood Empowerment Department who failed to report to work received

3

notices of pre-disciplinary hearings.  Sal Ruggiero, the manager of the Neighborhood Empowerment Department and the sole decision maker with regard to employee discipline, determined that McConico should be terminated.  On October 25, 2017, McConico was fired for failing to report to work for an emergency assignment.  The other two employees who failed to report to work that day—Cliffette Williams and Ralph Rodriguez—were not fired.

McConico appealed her termination to the Civil Service Board ("CSB"), which held a hearing on her termination on February 19, 2018.  At the hearing, Ruggiero testified that what distinguished McConico's case from that of Rodriguez and Williams was that McConico had clear instructions from Rios to report to work on September 12.  In contrast, Williams and Rodriguez called in to report that they would be absent, but they never made contact with a supervisor and so were not directly instructed to report to work.  Rios also testified and said he directly instructed McConico to report to Lowery Park at 7 a.m. on September 12. Based on this and other testimony, the CSB concluded that discipline was appropriate, but termination was not warranted.  Instead, the CSB reinstated McConico in her job but imposed retroactive suspension without pay from the date of her dismissal through January 1, 2018.  As a result, McConico was reinstated, but was not paid from the time of her dismissal through January 1, 2018.

4

McConico filed two charges with the Equal Employment Opportunity Commission ("EEOC") that are relevant here. She filed the first in June 2017, months before the hurricane and her absence from work. That charge alleged that she was subjected to different employment conditions because of her "medical restrictions." She filed a second charge in November 2017, alleging her termination was based on racial discrimination and in retaliation for filing her June 2017 EEOC charge.

## B. Litigation History

In June 2018, McConico filed an amended complaint in the United States District Court for the Middle District of Florida, alleging race discrimination under Title VII and retaliation under the ADA. She alleged that she is an African-American woman, was qualified for her position, and met the reasonable performance expectations for that position. As to her ADA claim, McConico alleged that her October 2017 discharge was in retaliation for filing the June 2017 EEOC charge. As to her racial discrimination claim, she alleged she was terminated after failing to report for work on one occasion while two similarly situated white employees were not disciplined or terminated for the same infraction.

Both McConico and the City moved for summary judgment. The district court granted the City's motion for summary judgment and denied McConico's

5

motion. It held that McConico failed to make a prima facie case of racial discrimination because she did not produce evidence that the City treated similarly situated employees outside her protected class more favorably. It also held that she failed to make a prima facie case of retaliation for her ADA claim because her termination and the filing of her EEOC charge were four months apart and there was no other evidence linking the two events. McConico timely appealed.

## II.

We review <u>de novo</u> the grant of summary judgment, drawing all reasonable inferences in favor of the non-moving party. <u>Alvarez v. Royal Atl. Devs., Inc.</u>, 610 F.3d 1253, 1263–64 (11th Cir. 2010). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Id.</u>

## III.

### A. Racial Discrimination Claim

The district court held that McConico did not make a prima facie case of discrimination because she failed to produce evidence that the City treated similarly situated employees outside her class differently than it treated her. We think McConico did make a prima facie case of discrimination. Nonetheless, we affirm because the City produced a legitimate, non-discriminatory reason for McConico's dismissal that McConico failed to rebut.

6

Under Title VII, it is unlawful for an employer to "discharge . . . or . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff may prove discrimination through direct or circumstantial evidence.  See Alvarez, 610 F.3d at 1264.  Because McConico has produced only circumstantial evidence, we evaluate her claim under the framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  Under this framework, "the employee first must show a prima facie case of discrimination."  Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1237 (11th Cir. 2016).  To do so, the employee must show (1) that she belongs to a protected class; (2) that she was subjected to an adverse employment action; (3) that she was qualified to perform her job; and (4) that her employer treated "similarly situated" employees outside her protected class more favorably.  Lewis v. City of Union City, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc).  A "similarly situated" employee is one who ordinarily engaged in the same conduct as the plaintiff; was subject to the same employment policy, guideline, or rule as the plaintiff; worked under the same supervisor; and shared the plaintiff's employment or disciplinary history.  Id. at 1227–28.  If the plaintiff makes this prima facie showing, the employer must present a legitimate, nondiscriminatory reason for the adverse

7

employment action. <u>Quigg</u>, 814 F.3d at 1237. If the employer does so, the employee must show that the employer's proffered reason is mere pretext. <u>Id.</u>

There is no dispute that McConico belongs to a protected class, was qualified for the position she held, and was subjected to adverse employment action. But the record contains conflicting evidence over whether a similarly situated employee was treated more favorably than McConico. McConico claims that Rodriguez, whom she identifies as a white male, was similarly situated to her but treated more favorably.[1] Like McConico, Rodriguez was an Automotive Equipment Operator who missed work on September 12. And, also like McConico, Rodriguez was issued a notice of pre-disciplinary action for failure to report to work on September 12. But unlike McConico, Rodriguez was not terminated for his absence.

The City argues Rodriguez was not similarly situated because Rodriguez received explicit permission to miss work from Wenrick. McConico, on the other hand, was specifically told to come in to work but did not do so. Under McConico's version of the events, however, Rios gave her permission to stay home from work on the morning of September 12. Assuming this to be true, as we

---

[1] Before the district court, McConico argued that Williams was also similarly situated and treated more favorably. However, Williams is an African-American woman and so was not outside of McConico's protected class. For that reason, any difference in the treatment of McConico and Williams cannot establish a prima facie case of discrimination. <u>Lewis</u>, 918 F.3d at 1220–21.

must at the summary judgment stage, McConico's testimony establishes that both she and Rodriguez received permission to be absent from work on September 12, and yet only McConico was terminated for this absence. Under our precedent, this was sufficient to make a prima facie case of racial discrimination.

But even though McConico made a prima facie case of discrimination, the district court did not err in granting summary judgment to the City. This is because the City proffered a legitimate, nondiscriminatory reason for firing her, which McConico failed to show was pretextual.[2] In its motion for summary judgment, the City produced evidence that Ruggiero decided to terminate McConico based on his subjective belief that she did not have permission to miss work on September 12. This facially reasonable justification was sufficient for the City to meet its burden of producing a legitimate, nondiscriminatory reason for terminating McConico. See Kidd v. Mando Am. Corp., 731 F.3d 1196, 1205 (11th Cir. 2013) (stating that the employer's burden is only one of production, not persuasion, so the employer "need not persuade the court that it was actually motivated by the proffered reason" (alteration adopted) (quotation marks omitted)).

---

[2] McConico dedicates much of her opening brief to arguing the district court should have given deference to the CSB's determination that she should not have been fired, but merely suspended. And she argues that the district court erred by not treating CSB's decision, rather than Ruggiero's, as the "final judgment" of the City to discipline her. McConico did not raise either of these arguments before the district court, so we deem them abandoned. See Holland v. Gee, 677 F.3d 1047, 1066 (11th Cir. 2012).

9

To rebut this, McConico was required to show that Ruggiero's proffered reason was pretextual, and that the real reason for her dismissal was racial discrimination. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (per curiam). But McConico failed to present any evidence suggesting Ruggiero's belief that McConico did not have permission to miss work was insincere or otherwise "unworthy of credence." See id. (quotation marks omitted). And there is no other evidence in the record suggesting that Ruggiero's real motivation was racial discrimination. On this record, the district court did not err by granting summary judgment on this claim.

## B. Retaliation Claim

The district court also did not err in holding that McConico failed to make a prima facie case of retaliation. McConico claims that she was fired in retaliation for filing an EEOC charge in June 2017. But the record contains no evidence of a causal connection between the EEOC charge and her termination.

To establish a prima facie case of retaliation, McConico was required to show that she engaged in statutorily protected conduct; she suffered a materially adverse action; and there was a causal link between the adverse action and her protected conduct. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260 (11th Cir. 2001). Here, the sole evidence of a connection between McConico's protected

conduct and her discharge was the temporal proximity between those two events.[3]

McConico filed her EEOC charge in June 2017 and was fired in October 2017.

Without other evidence, temporal proximity must be "very close" for us to infer a

causal connection.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th

Cir. 2007) (per curiam) (quotation marks omitted).  A gap of nearly four months,

without other evidence of retaliation, is not close enough to draw this inference.

Id.  Accordingly, the district court did not err in finding that McConico failed to

make a prima facie case of retaliation.

    **AFFIRMED.**

---

[3] McConico argued before the district court that there was a "pattern of hostility" from her supervisors, which showed a causal connection between her EEOC charge and her termination.  But Ruggiero, the sole individual responsible for her discharge, denied that he knew about McConico's earlier EEOC charge when he fired her.  There is no evidence in the record calling this assertion into question.